All right, welcome. Our second case for today is 20-20077 M.E. v. Alvin School District. We will first hear from Appellants' Counsel whenever you're ready. May it please the Court. This Court should reverse the summary judgment granted below because the record is replete with evidence that would permit a reasonable juror to conclude that Alvin ISD officials acted with deliberate indifference, indifference that enabled the repeated sexual assault of my client, a middle school girl, by a 42-year-old school police officer, sexual assaults that continued on a routine basis for a full year. As a brief roadmap for the Court, I'm going to start with talking about deliberate indifference today before turning to actual knowledge. And I want to begin by making a very discreet point about the standard for deliberate indifference, except that it's a high burden, and I'm not going to try to run away from that burden here today. The standard is that a school official acts with deliberate indifference when their action or inaction is clearly unreasonable. But the discreet point I want to make is that in a case with continued harassment or abuse, a school official's actions may be clearly unreasonable if they fail to take additional action or change their approach when the problems continue. And this principle is best illustrated by this Court's decision in Sewell v. Monroe City School Board, which was released just a few months ago, but after the briefing had concluded in this case. In Sewell, an African-American male was school, a dean refused to let him go to class. The second day of school, the principal and the superintendent met with his mom, spoke with the victim, and promised to warn the harassing employee. But even after these initial actions were taken, the harassment continued from that point. And this Court held that this could constitute deliberate indifference because the school continued and intensified throughout the school year, much less a reasonable one. And that principle has been the law in this circuit as far back as Rosa H. back in 1997. And with that principle in mind, I'd like to now turn to the evidence in this case. I am new to the case, and over the last two weeks, I've had a chance to study the briefs and the snapshots in time, and I think it will be helpful for the Court as well. When you look at the actions of the school officials at the three points in time I'm going to talk about, granting summary judgment on the issue of deliberate indifference in this case is unsustainable. And so I prepared a bench exhibit, which we submitted this morning, that looks at the facts relied on by the District Court at each of the three time frames and really crystallizes this issue. What I'm going to talk about now is tab A of what we submitted this morning. If you look at the table, you'll see that all of the facts relied on by the District Court are actions that took place in February 2017, related to the February 3rd, 2017 meeting in this case. And the majority of those facts are disputed. So the first snapshot I want to talk about is the February 3rd, 2017 meeting, when Aisha Graham, who was the assistant principal, met M.E., who is the mother, Tenard, who is the police officer, and a teacher. And during that meeting, M.E. expressed her concerns about the closeness of Tenard and J.E.'s relationship and their closed-door encounters. And so in examining the actions that took place, the District Court relied on six facts in reaching its decision about deliberate indifference. Look at the table. Those six facts are listed in the center column. And you'll see that all of the six stem from the actions taken from around that meeting time. And two of the six are undisputed. The first two are that Graham met with M.E., who is the mother, we don't dispute that, and that Graham had a follow-up conversation with Tenard to tell Tenard that he needed to stay away from J.E. We don't dispute that either. The one thing I will point out is that that conversation took place on February 3rd, 2017, the same day as the meeting. The other four facts that the District Court relied on in reaching its decision on deliberate indifference are undisputed. So by way of example, if you look in row four, so in row four, the District Court relied on the fact that Alton ISD claimed that Graham, the assistant principal, sent teachers an email about the situation in an effort to keep Tenard away from J.E. That email is in the record. It's in the record at 1123. And that email makes no reference to Tenard whatsoever. It does not mention his name, let alone warn the teachers that Tenard and J.E. should not continue to meet. So to credit that email as evidence that Graham was doing something about the relationship between Tenard and J.E. is to make an inference in favor of Alvin ISD, which is improper at the summary judgment phase. By way of second example, if you look at row five in the table, the District Court relied on the fact that Graham testified she told the counselor that Tenard should not meet with J.E. But the counselor's testimony disputes that. In the record at page 1112, the counselor says that never happened. Graham never told me that Tenard should not meet with J.E. And so what we're left with here, really the only undisputed facts that the District Court relies on, a meeting between the mother and the assistant principal took place and that she told Tenard, the offender, to stop meeting with J.E. But that is not sufficient. So based on the Supreme Court's holding in the Davis versus Monroe County Board of Education case, which found that simply warning a perpetrator could still constitute deliberate indifference, these actions do not support a decision on the deliberate indifference issue as a matter of law. I want to next turn to the second time snapshot. And the second time snapshot I want to focus the court's attention on are the next 10 months. So Judge Hittner's opinion relies on no facts from the next 10 months, but that's for good reason. That's because during that time frame, Graham testified, which is in the record on page 701, that she did nothing to keep her promise to M.E. that she would keep J.E. and Tenard separated. All the while, Tenard continues to pull J.E. out of class on a routine basis to sexually assault her. And as this court articulated in Sewell, doing nothing is the classic case of indifference. Now, the final point or point in time I want to focus the court's opinion on, and the one I think is the most important and where the court should focus its attention on, is December 2017. So in December 2017, and this is before Tenard is arrested, Graham is confronted with the fact that J.E. and Tenard have again spent an entire class period alone in his office, even though they have both already been told that they should not be doing that. And Judge Hittner's opinion does not address this event or this time frame at all. And here's what Graham, the assistant principal, did in response to this event. And this is in the record at page 701. So in response to this event, she tells J.E. not to meet with Tenard, and she says she told Root, who is the principal, that he should consider talking to Tenard. But there's no evidence that Root ever talked to Tenard. So this is the simplest path to this. At this point, that the problem is continuing in spite of her initial actions, just like in Sewell. All she does, the only evidence that we have, is that she tells a victim to stop seeing a perpetrator, which a reasonable juror could conclude was clearly unreasonable. So to affirm, this is what the court would have to hold. The court would have to hold that it is not clearly unreasonable, as a matter of law, for the only action a school official takes, when actual knowledge is assumed, as the district court did here, is telling the victim, a middle school girl, to keep away from her abuser, a 42-year-old police officer. But such a holding would be contrary to the law of this circuit as articulated in Sewell, and frankly, untenable. I was wondering what, in your opinion, would have constituted a reasonable inquiry. So the school district could have done any number of things, and we will admit that the case law holds that the law does not require school officials to take specific actions. By way of example, they could have questioned students. They could have followed up on Tenard's assertion that he kept his body camera footage on when talking to JE, and had they gone to review that footage, they would have seen that that's not true. They could have conducted a formal investigation at that point in time. In response to the December 2017 event, they could have called the parents and let them know this is continuing to happen. They could have reviewed the security camera footage. There was a security camera directly outside of the police officer's office, and had they reviewed that camera footage, which one of the other school police officers did, it would have revealed on some days JE was in and out of the office as much as six times in one day for 45 minutes at a time. She's in and out with her son. Some cases in the circuit do issue no contact orders, and the court finds no deliberate indifference, but they do so because the school takes some action to follow up on those no contact orders. Let me ask counsel. You said the district court assumed actual knowledge, which it did, and that's why to me there's a disconnect between saying, well, there was no deliberate indifference, because if you assume actual knowledge that there's a sexual assault going on in the school, you've got to report that person to the police, fire that person, make sure that person's never let on the school grounds again unless he's cleared or something. To me, there is this disconnect. If you assume they had actual knowledge, then it's not appropriate at all to allow this person to stay in the school, so why don't you talk about the actual knowledge that district court assumed, but we can still consider as a ground for summary judgment because it was urged by the defendant. What gave actual knowledge? You know, there was this meeting, and a lot of people, a lot of the testimony seems to indicate it was mostly a concern about her confiding about her parents' divorce. What gave actual knowledge of a substantial risk that sexual assault was occurring? Sure, so turning to actual knowledge, I'd first like to very quickly talk about two legal principles, and the first is that the standard is not actual knowledge of sexual assault. The standard, as it was articulated in Rosa H., and continues to be articulated in 2015 in the Ramos case, and in 2018, or excuse me, 2018 in the Ramos case and 2015 in the Kelly case, is that you need actual knowledge of a substantial risk of harassment or abuse. And the second principle I want to articulate is actual knowledge does not require an express confession from a school official for a claim to survive summary judgment. A finder of fact can infer actual knowledge of a substantial risk through circumstantial evidence. You know, prosecutors in America go to court every day in this country to prove Mintz-Rayat, to prove a knowing requirement for a crime, even though they don't have a confession from a defendant, and so in the Title IX context, there's no case that says actual knowledge cannot be inferred. And so then turning to the evidence of actual knowledge in this case, I've set that out to be what we submitted to the court this morning, and I've tried to drill in on the actual knowledge that Graham had specifically. And again, I'm going to talk about these three distinct points in time. So in February 2017, before there's even a meeting, multiple teachers tell Graham that they think there's a problem with J.E. and that she should meet with her, and that's in the record at 682 through 683. On February 1st, 2017, Graham knows J.E. skipped class to spend time with Tenard in his office, and that's the record at 693 and 1342. On February 3rd, 2017, she knows the mother is worried about the bond between J.E. and Tenard and their closed-door encounters, and I submit the purpose of that meeting is certainly in dispute. The mother's testimony at 643 and 645 indicate that the meeting was because she had a, quote, growing level of discomfort, and she was, quote, worried about them engaging in close encounters. In Graham's own notes from the meeting, which are in this record on page 1343, say that it was because the mother was worried about them meeting together behind closed doors. And then so from that point in time, she knows J.E. and Tenard are regularly meeting behind closed doors, and she also testifies on page 690 of the record that she knows this is a red flag. Then in the 10 months that followed, looking at that time frame, she knows J.E. continues to skip class, and she knows that J.E. has submitted, quote, alarming assignments. And then in December 2017, she knows J.E. and Tenard have again met alone in his office despite being warned not to do so, and she testified that that is a red flag, and that is actual knowledge of a substantial risk. And with that, I see my time has expired. Well, let me, I have a question that I'll give you extra time to answer. What do you think is the closest case factually that establishes actual knowledge of a substantial risk that sexual abuse would occur to this case? So I think the closest case of actual knowledge of a substantial risk is, you know, frankly, I rely back on the principle that was articulated in Rosa H. as far back as 1997. That sort of continued. I'd also point the court to Independent School District, or it's I.F. versus Louisville, which is an opinion from this court back in 2019. In that case, there were four different events. Some were sexual assault, and some were harassment. That there was actual knowledge for the first three was not really in dispute, but there was a dispute about the fourth. The court explained that, you know, whether or not that one incident gave them sort of evidence of actual knowledge of specific sexual harassment was not particularly important because, quote, based on the evidence, it is indisputable that L.I.S.D. had actual knowledge through Denson Whitehead, who was the counselor, that I.F. was being bullied in some manner. And that was all that was required for actual knowledge of a substantial risk. All right, thank you, counsel. We'll now hear from the school district. Mr. Brush. Good afternoon, Med Police, the court. My name is Jonathan Brush, and I represent the Alvin Independent School District. In my time before the court today, I intend to show why the district court's final judgment should be affirmed. But Judge Costa, I'll start with your point. There is some tension between assuming actual knowledge of sexual abuse because, as you say, the only response would be the one that the school district took when they gained actual knowledge of sexual abuse, which is to suspend the employee, terminate and cooperate with the prosecution. Now, though the judge assumed actual knowledge, as the court knows, the court can decide the case on the actual knowledge prong and should because it was briefed to the district court below and it was briefed to this court. Tellingly, the appellant didn't respond to the actual knowledge prong briefing in the reply brief. But here's what the evidence on actual knowledge shows. It shows that in February, after being told they should have a meeting, they met with J.E.'s mother. And at that meeting, testimony is clear. J.E. had no suspicion whatsoever that there was a sexual relationship. She was quite clear in her deposition testimony. She only suspected a sexual relationship existed the day she found the text messages on J.E.'s phone. She could not possibly have warned the school district of facts pointing to the existence of a sexual relationship, especially because her complaint was that J.E. was spending time with both Tenard and Mosley, a female teacher. And her complaint in her deposition testimony made this plain. She was concerned about professionalism. So that meeting, which the district court focused on, there is no evidence that could suggest that there's any knowledge of a sexual relationship. J.E. testified she never told anyone about it. Tenard denied it ever happened. So we know from the two participants that neither of them ever tipped off anybody that there was a sexual relationship. Mother did not suspect it. She did not report it in the meeting. That is undisputed. Following that meeting, the record is clear that Graham, who is the only relevant appropriate official for purposes of Title IX, took numerous appropriate steps based on what she knew. And here is where Mosley's statement to J.E. that she was going to get Tenard fired. Could that be, could a jury not find that to be proof of some measure of knowledge? It could not because Mosley is not an appropriate official. She's a teacher. Whatever Mosley knew or did not know is immaterial to the inquiry, unless there's evidence that it was reported to an appropriate official and there is no such evidence. What about the school administrators discussing J.E. and Tenard having this emotionally intimate relationship in February of 2017? Could a jury not find that to be proof of knowledge? No, Your Honor. They could not because based upon that testimony, Jerry, well, setting that aside for a second, students oftentimes will form bonds with students. And the information that was provided was that she also had an emotional bond with Mosley. And it doesn't follow that if she has a bond with a female teacher and a male teacher, that logically she must be engaged in an illicit sexual relationship with the male teacher. That would be an unfair inference for a jury to make. And just as the Supreme Court informally cautioned against drawing false inferences, the district court couldn't draw a false inference and this court shouldn't permit one to be drawn either. Returning to that meeting, all that was expressed was that she did not want J.E. meeting with faculty members other than a counselor. In response to the information she had there, Graham instructed Tenard and instructed Mosley not to meet with J.E. She talked to the counselor and said, you will need to come. J.E. may come to you. She emailed the teachers to say, send J.E. to the counselor if she needs to talk to anybody. Opposing counsel pointed to, on her chart, the idea that Tenard wasn't mentioned in the email or Tenard wasn't mentioned in the discussion with the counselor and that that somehow contradicts Graham's testimony. It does not. The fact is the email was sent to the teachers to send J.E. to Graham or the counselor if needed. That was a separate instruction. She gave a direct instruction to Tenard. She gave an instruction to the counselor that J.E. could be sent to her. It wasn't necessary for her to put in each of those instructions and not to Tenard or not to Mosley or not to anyone else. Maybe she could have put it in, but she didn't and the law doesn't require her to. And I think where opposing counsel's argument goes astray is revealed by the cases she points the court to. The Sewell case, that recent Title VI case, and the Davis v. Monroe case, which is a Title IX case, and the I.F. v. Louisville case all involved known harassment. And in Sewell, once the court moved past the statute of limitations issues, it was plainly apparent that the harassment was occurring to the knowledge of appropriate school officials. They knew about it and did nothing. That's the one of the harassers. I think it was a dean or principal who was one of the harassers, my opinion. But go ahead. Go ahead. It was your opinion, Judge Costa, and you're right. And so there, how can the school district escape that liability when the dean is harassing and the superintendent knows and does nothing? So Sewell is no help, nor is Davis, because in the Davis case, the young man who was harassing the little girl, his conduct was known and the school district tried repeatedly to address it and it failed and then they stopped. I.F. v. Louisville involved known sexual assaults. The cases that this court looks to in this context, and they are absent from Emmy's briefing and they were absent from her presentation today, are cases, Judge Willett, like your decision in Doe v. Edgewood this past summer, which came out after the briefing, which reaffirms that it's an actual knowledge standard and deliberate indifference is a high conclusion. But when they draw the wrong conclusion, they're not deliberately indifferent unless they have facts pointing. And this comes from Doe v. Taylor, I.S.D., which is a Section 1983 case but involves the identical deliberate indifference standard. And there, the en banc court held that the test is knowledge of facts pointing plainly towards the occurrence of a sexual relationship plus deliberate indifference. And that's really the test this court has used in these cases. And even in cases like Doe v. Dallas, I.S.D., which is cited in our briefing, there can be a report of actual abuse. In that case, it involved a report that a teacher had groped a student. The principal drew the wrong conclusion, said, don't do it again or put yourself in a situation like that or you'll be terminated. This court held that was enough. In Hagen v. Houston Independent School District, reports were made that a coach was sexually abusing students. In fact, one of the students confessed to the principal that that was the case, subsequently changed his story and the principal stopped investigating. This court held he was not deliberately indifferent. Each of those cases involved much more direct reports of sexual misconduct in this case, because in this case, there was no report of a sexual relationship. So turning to the second period that my colleague on the other side highlighted, and that's the until December. And she notes nothing was done. And she characterized Graham's admission as she didn't do anything. That's not really accurate because Graham testified, and this is on page 701 of the record, that she never saw Tenard and J.E. again together after that meeting. Without evidence showing that there had been a report to her that they were continuing to meet, there was no need to take any further action at that point. The facts would indicate... To one of the things that you just touched on, it seems to me that the school administrators had knowledge of an inappropriate relationship between Tenard and J.E. If not, then what more, in your opinion, is needed to constitute actual knowledge for purposes of Title IX? Yes, Your Honor. I would say that the test is the one the court articulated in Doe versus Taylor. Facts pointing plainly to the conclusion that there is sexual abuse. So from that February meeting, if anything, and we can use the term inappropriately, colloquially, M.E. complained that she didn't like the relationship with Tenard and the relationship with Mosley. She didn't complain of any touching, anything sexually explicit. If the court were to look to cases, and again, Doe versus Taylor is instructive because it analyzed two different school district employees' knowledge. One was the principal who got reports of touching from other with Coach Stroud. There were specific reports that there had been conduct that suggested romantic behavior. I believe there was even a Valentine exchange that came to light. Those are the sorts of facts that point plainly to the occurrence of sexual abuse. Reports that there is misconduct, there is touching. Now, looking at that meeting where Tenard had met with J.E., record evidence reveals that there were other girls in the room at the time and they were purportedly responding to an investigation report. But after that meeting where Graham took steps to keep the two apart, she took steps that in prior opinions this court has found avoid a finding of deliberate indifference even when there's more knowledge, when there's been a report of groping, when there's been a report of sexual abuse and it's undisputed there was no report of that here. This court has found these sorts of steps are sufficient to avoid a finding of deliberate indifference. Now, here's maybe why the district court assumed actual knowledge is because these two prongs almost collapsed. Because you assess the district's deliberate indifference or not based on what it knew. And so I think what Judge Hittner was doing is looking at what the facts showed the district knew in February, which was that there had been this report that Mom was dissatisfied but that Mom had no suspicion of a sexual relationship and there was nothing that was revealed that should create the suspicion of a sexual relationship. So during the time period after that February meeting and after Graham gives her directives to the district's employees and Tenard, nothing happens because she never saw Tenard and J.E. together again for many months and no one reported that to her. To the contrary, in fact, there is evidence in the record that at one point Tenard drove J.E. home with Emmy's permission, which would seem to sort of negate the conclusion that there was an ongoing concern from Emmy. And that brings us to the December 2017 meeting where J.E. leaves class, says she's going to the restroom and goes to Tenard's office. When that information was reported by the teacher Velez to Graham, and so that in and of itself indicates a lack of deliberate indifference on the part of the school district, she leaves the class and has gone too long and the assistant principal is called. The assistant principal does several things. She starts hunting through the hallways looking for her. She's trying to find where Emmy is. I'm sorry, J.E. is. She even goes back to begin reviewing video footage when Velez calls her and tells her, never mind, she's back. She said she went to the restroom, but then she said she went to report something to Tenard. That's the first time from since February that there was any indication that Graham's efforts had not been effective. That's what Graham knows. So Graham takes the steps to inform the principal and also talks to J.E. Now, opposing counsel characterized this as a rule of law that would say you can avoid deliberate indifference by telling a victim to stay away from their abuser. That assumes that Graham had knowledge of facts pointing plainly to the existence of sexual abuse. And on this record, she did not. The knowledge, the actual knowledge the district had was not of a sexual relationship. This is more akin to the Doe versus Edgewood case where Judge Willett wrote the opinion this summer in 2020, where it's really a constructive notice case. And the thrust of these constructive notice cases is you should have divined there was a sexual relationship, but there was no report of anything that involved sexual conduct at all. And as this court held in that case, constructive notice is not sufficient. The Title IX standard continues to require actual knowledge. So to rule the way J.E. and M.E. want the court to rule today, the court would have to depart from many published opinions that on highly similar facts hold that there was no actual knowledge or no deliberate indifference. And the court frequently addresses the deliberate indifference prong because it allows the court to assess the steps the school district did take. And this court has routinely counseled that those steps don't have to be perfect. They just have to be steps that are trying to respond to what they knew. And here they did. And that negates a finding of deliberate indifference based on what they knew. And there's no evidence that there was actual knowledge of a sexual relationship at any time before the Brazoria County Sheriff's deputies showed up at the school after M.E. made her report. On this record, Judge Hittner's determination was correct. There's no question of material fact on actual knowledge, although he didn't address that. The record is clear that there was no genuine question of material fact there, and there's no genuine question of material fact on the deliberate indifference prong. The school district here, although they did not prevent or stop the abuse, took steps that were plainly reasonable based on what they knew. And if the court were to hold differently, the court would risk collapsing the deliberate indifference standard and Title IX jurisprudence into something more akin to a negligence claim or a gross negligence claim. And as this court has said, deliberate indifference is a higher bar. It's more than negligence. It's more than gross negligence. It's a lesser form of intent. You have to know and intend the abuse to continue. That's the thrust of deliberate indifference, and there's no evidence that the district knew and essentially intended the abuse to continue. This court should affirm Judge Hittner's final judgment in favor of the appellees. There are no further questions. I'll yield some time back to the court. All right. Thank you, counsel. We'll now hear rebuttal. May it please the court. On rebuttal, I would just like to make three succinct points. And first, I want to quickly address the factual dispute over the point of the meeting. I submit to the court that in the record in pages 643 and 645, it is clear that Emmy testified that from her perspective, the point of the meeting is that because she was concerned about the, quote, growing level of discomfort and, quote, the close encounters. But something that, frankly, was always in the back of my mind when I read this record, and I believe it's on page 699 of the record, if this meeting was really what the school district says, that it was just about J.E. sharing information about her parents' divorce, then why in the meeting, as is reflected in Graham's own notes and in Graham's testimony, why in the meeting did Tenard need to go to such lengths to reassure M.E. that his body camera was on every time he was alone with J.E. in his office? That, I at least think, creates at the very least a factual dispute about the point of this meeting. The second point I want to make is I want to just quickly point out what I think are the only three facts this court needs to decide the actual knowledge issue. The first fact on page 690 of the record is that Graham testified that meeting with a student alone behind closed doors is a red flag. The second fact contained on pages 700 through 701 of the record is that it is undisputed that Graham knew that even after J.E. and Tenard had been told to stop meeting alone in his office, they continued to meet alone in his office, sometimes for entire class periods. And then the last fact I want to point out is that... Who knew that? Just what does the record say about who knew that? So Graham knew. So the December 2017 incident is... I know about that one incident, but did Graham know there were repeated continued meetings? So Graham testified that she received attendance records every day. They were emailed to her by the clerk and those I don't have in front of me. I think it's page 1347. But those attendance records contained the records of J.E.'s continued absences. And I think a reasonable juror could confer. Graham has those records. She knows J.E.'s attendance is a problem. She receives those records every day. She knows that her previous attendance problems were because she was skipping class to meet with Tenard. And I think a reasonable jury could infer that fact. And so... But we do know at the very least that she testified and admitted to that that one particular incident in December 2017, she was made aware of the fact that J.E. and Tenard, after being warned, met alone in his office for an entire class period. And the final actual knowledge fact that I think are sort of the three the court can rely on is that the testimony is that M.E. was concerned about their inappropriate relationship and told Graham that. And I think when you look at just those three facts, Graham testifies meeting alone with a student is a red flag. Graham knows J.E. and Tenard have continued to meet alone despite being told not to. And the mother has told Graham she is concerned about their relationship. Just based on those three facts, a reasonable juror could look at those facts and determine that Graham had actual knowledge of a substantial risk. On the last point you make about what M.E. told, thought about the inappropriate relationship, opposing counsel cited testimony that the mother did not suspect any sexual relationship or any concern about sexual relationship. So if you agree that's in the record, what would the school have known that she didn't that should have made them aware if she wasn't? So I have two points. And the first point is that what M.E. knew is not the standard. It's what Graham knew. But more importantly, so in M.E.'s testimony, she makes an important point that part of the purpose of the meeting, and this is on page 643 of the record, is that because she wasn't at school, she never saw them interact. She felt like she didn't have the full picture. And so she wanted the meeting because she wanted to get that full picture. And that's in her testimony. It's page 643. And the school certainly had that full picture. You know, they knew that she was continuing to skip class. They knew that she was continuing in his office. So for instance, the December 2017 incident, Graham didn't bother to call M.E. Graham knew that M.E. didn't. And with that, I see my time has expired. Unless the court has further questions, we will submit. All right. Both sides, thank you for a good argument and your excuse from Zoom.